# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Village of Bellwood v. American National Bank & Trust Co. of Chicago*, 2011 IL App (1st) 093115

---

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF BELLWOOD, a Municipal Corporation, Plaintiff-Appellant, v. AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as trustee under trust agreement dated 12/29/1949 and known as Trust #7973, PRIVATE BANK AND TRUST COMPANY, HANDSCHY INDUSTRIES, INC., a Delaware Corporation and UNKNOWN OWNERS, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket Nos. 1–09–3115, 1–09–3116, 1–09–3117, 1–09–3118, 1–09–3119, 1–09–3120, 1–09–3121 cons. |
| Filed | June 7, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's denial of plaintiff village's motion to abandon eminent domain proceedings was reversed, notwithstanding the fact that the village had negotiated and finalized an "Agreed Stipulation and Final Judgment Order" with each defendant and one defendant had sold its business in reliance on the condemnation, since section 7–110 of the Eminent Domain Act permitted the village to abandon the condemnation proceedings because the village had not yet taken possession of the properties, and, furthermore, the agreed orders did not specifically waive the village's right to abandon the proceedings and defendants could not establish reasonable reliance for purposes of equitable estoppel where the village retained the right to abandon the proceedings until it took possession of the properties. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 06–L–51280, 06–L–51282 through 06–L–51284, 06–L–51286 through 06–L–51288; the Hon. Alexander P. White, Judge, presiding |
| Judgment | Reversed. |
| Counsel on Appeal | Shefsky & Froelich Ltd. (J. Timothy Eaton and Douglas M. Ramsey, of counsel), and Rock Fusco LLC (John J. Rock, of counsel), both of Chicago, for appellant. |
| | Krasnow Saunders Cornblath, LLP, of Chicago (Charles A. Valente, of counsel), for appellee Handschy Industries, Inc. |
| | Foran, O'Toole & Burke, LLC, of Chicago (Mark T. O'Toole, of counsel), for other appellees. |
| Panel | JUSTICE KARNEZIS delivered the judgment of the court, with opinion. Justice Harris concurred in the judgment and opinion. Presiding Justice Cunningham specially concurred, with opinion. |

**OPINION**

¶ 1        Plaintiff, the Village of Bellwood, appeals from an order of the circuit court in favor of defendants, American National Bank and Trust Company of Chicago, as trustee under trust agreement dated December 29, 1949, and known as Trust #7973; Private Bank and Trust Company; Handschy Industries, Inc., a Delaware corporation; and unknown owners, denying Bellwood's motion to abandon eminent domain proceedings. On appeal, Bellwood contends that section 7–110 of the Eminent Domain Act (735 ILCS 5/7–101 *et seq.* (West 2004)) provides a municipality with the absolute right to abandon eminent domain proceedings prior to the municipality taking possession of the property. For the following reasons, we reverse the circuit court's order denying Bellwood's motion to abandon and remand this cause to the circuit court for further proceedings consistent with this opinion.

¶ 2                                              BACKGROUND

¶ 3 On December 29, 2006, Bellwood initiated seven eminent domain lawsuits against defendants to acquire certain parcels of property located in Bellwood, Illinois. Bellwood sought to redevelop the properties as part of a revitalization project that was to include a new Metra train station, retail shopping and residences. The properties Bellwood sought to acquire were: 120 S. 25th Avenue, 2601 Grant Street, 2615 Grant Street, 2701 Grant Street, 2715 Grant Street, 2801 Grant Street, and 2821 Grant Street. The seven lawsuits were consolidated by the circuit court.

¶ 4 Due to concerns about possible environmental contamination of two of the properties, Bellwood hired Pioneer Engineering & Environmental Services to evaluate the condition of the properties. Pioneer determined that two of the properties were contaminated and needed to be remediated. Pioneer provided Bellwood with an estimate to remediate the properties, which ranged from $1,314,000 to $2,050,000.

¶ 5 Subsequently, Bellwood negotiated and finalized an "Agreed Stipulation and Final Judgment Order" (collectively agreed orders) with each defendant that contained the purchase price of each property and the terms of the taking. Each of the agreed orders was substantially similar and provided generally:

– on or before September 1, 2009, Bellwood shall deposit with the treasurer of Cook County, Illinois, the sum of (amount of compensation) for the benefit of the owners, as full and just compensation for the property taken;

– upon making the deposit with the treasurer of Cook County, Illinois, Bellwood shall be thereby vested with the fee simple title to the property;

– each party waives its rights of appeal in this cause;

– this order is final and disposes of all issues that have been raised or could have been raised in this action; there is no just cause to delay entry or enforcement of this order.

Each of the agreed orders was filed with the court between October and December of 2008.

¶ 6 On August 31, 2009, the day before Bellwood was to deposit just compensation with the treasurer and take title to the properties, Bellwood filed a motion entitled "Combined Motion to Vacate Agreed Stipulation and Final Judgment Order and for Leave to Voluntarily Dismiss Complaint." Bellwood sought to vacate all seven of the agreed orders and sought to dismiss the cases without prejudice. In the motion, Bellwood noted several reasons why the revitalization project had subsequently become financially unfeasible, including depressed property values and increased costs for remediating the contaminated properties.

¶ 7 Shortly thereafter, on September 22, 2009, Bellwood withdrew its motion to vacate and filed a motion entitled "Motion to Confirm Abandonment of Eminent Domain Proceedings and to Voluntarily Dismiss." Bellwood sought to confirm its abandonment of the eminent domain cases pursuant to sections 7–110 (735 ILCS 5/7–110 (West 2004)) and 7–123 (735 ILCS 5/7–123 (West 2004)) of the Eminent Domain Act and sought to dismiss the complaint pursuant to section 2–1009(a) of the Code of Civil Procedure (735 ILCS 5/2–1009(a) (West 2006)). After a hearing, the circuit court denied Bellwood's motion to abandon. The court stated that it was denying the motion because "you can't just go out and make agreements and then all of a sudden back out on them. I mean, and that's the long and

the short of it right there. I realize that I'm treading on some very thin ice, primarily because as a matter of law, it makes it very clear that there can be a voluntary dismissal, abandonment." In the court's written memorandum and order, the court found that although a party generally has the right to dismiss a suit initiated under the Eminent Domain Act, Bellwood was precluded from doing so because it had entered into the agreed orders with defendants. The court determined that the agreed orders were essentially contracts that could only be modified or rescinded by the parties or for certain other reasons not applicable here. Bellwood appeals from the court's denial of its motion to abandon.

¶ 8                                    ANALYSIS

¶ 9        The question presented on appeal is whether Bellwood's right to abandon the eminent domain cases is precluded by Bellwood entering into the agreed orders with defendants. We note that there is no Illinois case on point in which a condemning authority has sought to abandon condemnation proceedings after entry of a settlement agreement. As such, this case presents an issue of first impression.

¶ 10       Bellwood contends on appeal that section 7–110 of the Eminent Domain Act allows it to abandon an eminent domain proceeding at any time and for any reason prior to taking possession of the property. Bellwood further maintains that the agreed orders do not affect its right to abandon because the orders made no reference to the abandonment statute.

¶ 11       Defendants contend, on the other hand, that Bellwood waived its right to abandon the eminent domain proceedings by entering into the agreed orders with defendants. Defendants also maintain that if Bellwood had any right to abandon, the right should be lost by estoppel.

¶ 12                                   Jurisdiction

¶ 13       Initially, we note that defendants contest this court's jurisdiction. Defendants contend that this court does not have jurisdiction because the agreed orders provided that each party waived its right of appeal and that the orders were final and disposed of all issues that were raised or could have been raised. Defendant Handschy also argues that this court does not have jurisdiction because the circuit court's order denying the motion to abandon was not final and appealable because it did not terminate the proceedings on the merits or dispose of all the rights of the parties. Bellwood disagrees, arguing that this court has jurisdiction pursuant to both Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303(a) (eff. Feb. 1, 1994).

¶ 14       Supreme Court Rule 301 provides, "[e]very final judgment of a circuit court in a civil case is appealable as of right." Ill. S. Ct. R. 301. Supreme Court Rule 303(a) provides that an appellant must file a notice of appeal "within 30 days after the entry of the final judgment appealed from." Ill. S. Ct. R. 303(a). An order is final if it "terminates the litigation between the parties on the merits or disposes of the rights of the parties either on the entire controversy or on a separate *** part of it." *Bennett v. Chicago Title & Trust Co.*, 404 Ill. App. 3d 1088, 1094 (2010). Further, an order is final when, if affirmed, the only thing remaining is to execute the judgment. *Argonaut Insurance Co. v. Safeway Steel Products, Inc.*, 355 Ill. App. 3d 1, 9 (2004).

¶ 15 Here, we find that the order denying Bellwood's motion to abandon is a final and appealable order because it disposed of the rights of the parties and terminated the litigation. The circuit court's order denied Bellwood's motion to abandon the eminent domain proceedings and set the parties' rights and obligations in accordance with the agreed orders. All that was left for the court to do was to execute the judgment on the agreed orders.

¶ 16 Further, we cannot construe the parties' waiver of the right to appeal in the agreed orders as a waiver of Bellwood's right to appeal from the denial of its motion to abandon. Bellwood is not attacking or contesting the agreed orders; rather, Bellwood is contesting only the denial of its motion to abandon, an order separate and distinct from the agreed orders. Therefore, the parties' waiver of the right to appeal as provided for in the agreed orders does not affect Bellwood's right to appeal the denial of its motion to abandon. Accordingly, we have jurisdiction over this appeal. We now turn to consider the merits of the question presented on appeal.

¶ 17                                        Eminent Domain

¶ 18 Condemnation, or eminent domain, is the process by which a sovereign exercises the power to "take" private property for public purposes subject to the constitutional requirement that just compensation be paid to the owner. *Forest Preserve District of Du Page County v. Brookwood Land Venture*, 229 Ill. App. 3d 978, 982 (1992). No taking occurs until a condemnation petition is filed, just compensation is ascertained, and such compensation is paid. *Brookwood Land Venture*, 229 Ill. App. 3d at 982. Since a taking does not occur until just compensation has been paid, the condemning authority may abandon the proceeding prior to compensation being paid. *Forest Preserve District of Du Page County v. West Suburban Bank*, 161 Ill. 2d 448, 456 (1994). Title to the property does not pass and the condemnor is not entitled to possession until just compensation has been paid to the owner or deposited, pursuant to statutory authority, for his benefit. *Forest Preserve District of Du Page County v. First National Bank of Franklin Park*, 401 Ill. App. 3d 966, 990 (2010). The condemnation of private property for public use under the Eminent Domain Act is a special statutory proceeding. *Department of Public Works & Buildings v. O'Brien*, 402 Ill. 89, 92 (1948). Its procedure is regulated by the statute and is not governed, either as to pleading or practice, by the rules of the common law. *O'Brien*, 402 Ill. at 92. Eminent domain proceedings are *sui generis*. *County of Cook v. Malysa*, 39 Ill. 2d 376, 379 (1968).

¶ 19 The circuit court's decision to grant a motion to abandon will not be disturbed unless it is contrary to the manifest weight of the evidence. *City of Chicago v. Harris Trust & Savings Bank*, 346 Ill. App. 3d 609, 617 (2004). A decision is against the manifest weight of the evidence if the facts clearly demonstrate that the court should have reached the opposite conclusion. *In re D.M.*, 336 Ill. App. 3d 766, 773 (2002).

¶ 20 However, a *de novo* standard of review is applied to issues of statutory construction. *Paris v. Feder*, 179 Ill. 2d 173, 177-78 (1997). A court's primary objective in construing a statutory provision is to determine and give effect to the legislature's intent. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). The language of the provision is the best evidence of that intent and must be given its plain and ordinary meaning. *Paris*, 179 Ill. 2d at 177.

¶ 21      Section 7–110 of the Eminent Domain Act provides:

"[A]fter the plaintiff has taken possession of the property pursuant to the order of taking, the plaintiff shall have no right to dismiss the complaint, or to abandon the proceeding, as to all or any part of the property so taken, except upon the consent of all parties to the proceeding whose interests would be affected by such dismissal or abandonment." 735 ILCS 5/7–110 (West 2004).

¶ 22      As noted above, there is no Illinois case on point in which a condemning authority has sought to abandon condemnation proceedings after entry of a settlement agreement. However, we find the case of *City of Chicago v. Harris Trust & Savings Bank*, 346 Ill. App. 3d 609 (2004), instructive. In *Harris*, the plaintiff, the City of Chicago, instituted condemnation proceedings to acquire certain commercial property at the corner of Randolph and State Streets. Two of the tenants with leasehold interests in the property did not have condemnation clauses in their leases, so the city sought to acquire the two leasehold interests by a quick-take proceeding, pursuant to section 7–103 of the Eminent Domain Act (735 ILCS 5/7–103 (West 2004)). Following a hearing, the circuit court determined the preliminary just compensation for the leasehold interests and the city deposited the funds with the treasurer. Prior to the date the city would have taken possession of the leasehold interests, the city moved to abandon the taking and to recover its preliminary just compensation. The circuit court determined that the city could abandon its quick-take proceeding because the city had not yet taken possession of the leaseholds. This court affirmed on appeal, holding that section 7–110 of the Eminent Domain Act provides that abandonment of a condemnation proceeding is precluded only after a plaintiff has taken possession of the property. *Harris*, 346 Ill. App. 3d at 618. This court determined that because the city had not yet taken possession of the leaseholds, it could abandon its taking and recover the amount deposited as preliminary just compensation. *Harris*, 346 Ill. App. 3d at 620.

¶ 23      Here, the statutory language is plain and clear. It provides that abandonment of the condemnation proceeding is precluded only after the plaintiff has taken possession of the property. The parties do not dispute that Bellwood never took possession of the properties. Therefore, giving the words of the statute their plain and ordinary meaning, we find that the statute permits Bellwood to abandon its eminent domain proceeding. Similar to this court's holding in *Harris*, because Bellwood did not yet take possession of the properties, Bellwood had the statutory right to abandon the condemnation proceedings pursuant to section 7–110 of the Eminent Domain Act. Although *Harris* involved a quick-take proceeding, this court's analysis did not differentiate between a general condemnation proceeding and a quick-take proceeding. We also find no reason to do so here.

¶ 24      Defendants distinguish *Harris* on the basis that the city was allowed to abandon its condemnation action before entry of judgment, not after, as Bellwood seeks to do. However, we do not believe that *Harris* should be interpreted so narrowly. While it is true that *Harris* did not involve the right to abandon after agreed orders had been filed with the court as in this case, this court interpreted and construed the language of section 7–110 of the Eminent Domain Act, finding a right to abandon before possession. We cannot assume, as defendants do, that this court would have denied the city's motion to abandon had a settlement agreement been filed with the court. This court upheld the city's right to abandon even after

-6-

the circuit court had determined the preliminary just compensation and the city had deposited that amount with the treasurer. Therefore, we cannot speculate that had there been a settlement agreement, as in this case, the court's findings would have been different.

¶ 25 Additionally, we do not find that the provisions in the agreed orders, namely that the parties waived their right to appeal or that the orders were final and disposed of all issues that were raised or could have been raised, constituted a waiver of Bellwood's statutory right to abandon. A party may waive a statutory right as long as there was an intentional relinquishment of a known right. *Smith v. Freeman*, 232 Ill. 2d 218, 228 (2009). Here, the agreed orders made no reference to the statutory right to abandon or that Bellwood specifically waived that right. The only intentional relinquishment of a known right was the right of either party to contest the substance of the agreed orders. At oral arguments the agreed orders were referred to as "heavily negotiated documents." Had the parties intended for Bellwood to waive its statutory right to abandon, a provision stating such should have been included. The absence of any reference to the abandonment statute in the agreed orders leads to the conclusion that, in this case, the agreed orders in no way precluded Bellwood's abandonment of the eminent domain proceeding. Had the agreed orders included a waiver of Bellwood's right to abandon the eminent domain proceeding, we would have reached a different conclusion. However, that is not the case that is before this court.

¶ 26 Defendants further argue that the agreed orders should be viewed similar to a consent decree or stipulated judgment, which this court should construe according to contract principles. Thus, defendants maintain that the agreed orders can only be set aside or modified at the request of one party and only upon a showing of fraud, duress, illegality, or similar reasons.

¶ 27 Defendants rely on *City of Marseilles v. Radke*, 287 Ill. App. 3d 757 (1997), and *Kohl Industrial Park Co. v. County of Rockland*, 710 F.2d 895 (2d cir. 1983), for support. Defendants note that neither *Radke* nor *Kohl* directly addresses the issue in this case, but, rather, they are useful for providing "guiding principles" in eminent domain cases.

¶ 28 In *Radke*, the parties entered into a "consent judgment," which was filed with the court. The property owner then sought to vacate the judgment, arguing that the court lacked subject matter jurisdiction to enter the consent judgment because the property owner subsequently discovered that the property the city sought to condemn was not within the legal boundaries of the redevelopment district. The circuit court denied the motion to vacate and the property owner appealed. On appeal, this court reversed, finding that the motion to vacate should have been granted based on a lack of subject matter jurisdiction. *Radke*, 287 Ill. App. 3d at 760.

¶ 29 In *Kohl*, the municipality notified the property owner that it intended to acquire a portion of its property through eminent domain proceedings. However, after a period of time had passed without the municipality filing an eminent domain proceeding, the property owner filed a section 1983 claim in federal court (42 U.S.C. § 1983 (2006)). Prior to trial on the section 1983 claim, the parties reached a settlement agreement, which was incorporated into an order by the court. Subsequently, the municipality determined that it only wanted to obtain an easement over a portion of the property instead of acquiring title to the property,

as provided for in the settlement agreement. The district court upheld the parties' settlement agreement, finding that the municipality was bound by its terms and ordered the municipality to take title to the property. The second district on appeal affirmed, holding that the parties had entered into a valid settlement agreement and were bound by its terms. *Kohl*, 710 F.2d at 904.

¶ 30    Despite defendants' reliance on *Radke* and *Kohl* to provide "guiding principles" regarding eminent domain cases, we find them of little relevance to the question presented here. *Radke* concerned vacating a consent judgment based on lack of subject matter jurisdiction and *Kohl* concerned a settlement agreement entered into in a section 1983 case, not an eminent domain case. Neither of these cases reached the issue of whether a municipality can abandon an eminent domain proceeding after the parties have entered into a settlement agreement.

¶ 31                                                    Estoppel

¶ 32    Further, we cannot conclude that Bellwood's right to abandon was lost by estoppel, as defendants contend. Courts do not favor applying the doctrine of equitable estoppel against a public body. *La Salle National Trust, N.A. v. Village of Westmont*, 264 Ill. App. 3d 43, 64-65 (1994). When invoked against a governmental entity exercising its governmental functions, estoppel will only apply in extraordinary or compelling circumstances. *Zeitz v. Village of Glenview*, 304 Ill. App. 3d 586, 593-94 (1999). Courts will only invoke equitable estoppel against a public body "when it is necessary to prevent fraud and injustice." (Internal quotation marks omitted.) *Hawthorne Race Course, Inc. v. Illinois Racing Board*, 366 Ill. App. 3d 435, 446 (2006). A court will apply equitable estoppel against a municipality if the aggrieved party can establish: (1) the municipality affirmatively acted; (2) the affirmative act induced substantial reliance; and (3) the aggrieved party substantially changed its position as a result of its justifiable reliance. *Monat v. County of Cook*, 322 Ill. App. 3d 499, 509 (2001). Defendant Handschy argues specifically that estoppel should apply here because Handschy sold its business in reliance on Bellwood's actions to take the property and it has incurred and will continue to incur costs pursuant to its lease with the owner of the property it had occupied.

¶ 33    We look to the case of *Department of Transportation v. Veach Oil Co.*, 22 Ill. App. 3d 229 (1974), for guidance. In *Veach Oil*, the Department of Transportation filed a condemnation action to take a portion of the defendant's property to build curbing and entranceways around the defendant's service station. After compensation had been fixed by order of the trial court, the Department of Transportation moved to dismiss the condemnation proceeding. The defendant objected arguing that the doctrine of estoppel prevented the dismissal of the condemnation proceeding because the defendant had constructed a new building to replace an existing building located on the portion of property that the Department of Transportation sought to condemn. This court held on appeal that estoppel did not apply because the defendant could not establish "reasonable" reliance because pursuant to the abandonment statute, the Department of Transportation had the right to dismiss or abandon the condemnation proceedings prior to the actual condemnation or taking. *Veach*

-8-

*Oil*, 22 Ill. App. 3d at 231-32. This court further stated, regarding the defendant's alleged damages, that "[d]amages to an owner of land, no part of which has been physically taken by the State, are not within the purview of the Illinois Eminent Domain Act." *Veach Oil*, 22 Ill. App. 3d at 232. This court explained that a property owner may have an action at law for consequential damages against the State, but such a remedy should be pursued in the Court of Claims. *Veach Oil*, 22 Ill. App. 3d at 232.

¶ 34 Here, following this court's holding in *Veach Oil*, we similarly find that defendants cannot establish reasonable reliance on Bellwood's initiation of condemnation proceedings because Bellwood retained the statutory right to dismiss or abandon those proceedings until the actual taking of the properties occurred. Further, with respect to any consequential damages suffered by defendants and specifically claimed by Handschy, as this court stated in *Veach Oil*, the Eminent Domain Act does not provide a remedy for consequential damages. Any remedy for consequential damages lies outside the Eminent Domain Act and must be pursued through a different course of action.

¶ 35 In conclusion, we interpret section 7–110 of the Eminent Domain Act as permitting Bellwood to abandon the condemnation proceedings because Bellwood had not yet taken possession of the properties. Additionally, Bellwood's right to abandon was not precluded by entering into the agreed orders with defendants because the orders did not specifically waive Bellwood's right to abandon. We find no support for the circuit court's denial of Bellwood's motion to abandon and find that it was against the manifest weight of the evidence.

¶ 36 Accordingly, we reverse the judgment of the circuit court.

¶ 37 Reversed.


¶ 38 PRESIDING JUSTICE CUNNINGHAM, specially concurring.

¶ 39 I concur in the holding reached in this case. However, I write separately to express my opinion that defendant Handschy has indeed suffered a wrong for which the legislature has not provided a remedy. This case raises an issue of first impression regarding the lack of an adequate remedy for parties such as Handschy in circumstances such as that presented here. The legislature is thus on notice regarding the consequences of the statute upon which the resolution of this case turns. I make the assumption that the unfair consequences which flow from the interpretation of the statute in question is unintended. Further, since eminent domain proceedings are *sui generis* and are necessarily outside the common law, unfair, unintended consequences which result from an eminent domain proceeding will necessitate a statutory fix.

¶ 40 In the case before us, section 7–110 of the Eminent Domain Act makes it clear, as our opinion notes, that the Village of Bellwood is entitled to abandon its intent to take the subject property at *any time prior to taking possession* of the property. The statute is unambiguous and at no time did Bellwood actually "take possession" of the property. However, this case is unique in that a written settlement agreement was entered into by Bellwood and the property owners whereby the terms of the "taking" including compensation for the property were agreed upon. Unfortunately for defendant Handschy, it was not an owner and therefore

not included in the protracted discussions and subsequent agreement between Bellwood and the property owners. Yet, Handschy, as a lessor with its place of business located on one of the subject properties targeted by Bellwood, had much to lose but no voice in the agreement or resolution between Bellwood and the property owners. In fact, it appears that of all the parties, Handschy has suffered the most significant loss.

¶ 41 Handschy was required to wind down and close its business, seek a new location, move its business and suffer all of the attendant difficulties and financial consequences of such activities. According to Handschy the entire exercise cost the company over 2 million dollars, not all of which will be recovered. Its business is now in a new location and it had to endure everything that flows from opening a business in a new location. That amounts to inconvenience and expenditure of man power, time and financial resources. Further, Handschy argues that Bellwood should be estopped from asserting that it had an absolute right to abandon the agreement in light of the time and financial commitment that had been expended by the parties at the time of the abandonment. Unfortunately for Handschy, the statute clearly gives Bellwood the right to abandon the eminent domain proceedings since it had not taken possession. However, there should be recognition that in unique circumstances such as this, the well-established principle that there is a remedy for every wrong should be included in the statutory scheme which governs this situation. The unique nature of eminent domain proceedings gives the legislature the opportunity to craft language to prevent unintended consequences and unfair results.

¶ 42 In this case, the preliminary preparation by the Village of Bellwood was lengthy. The parties, all except Handschy, had negotiations and eventually reached an agreement, only to be told later that the project was abandoned. Handschy makes a credible argument that it will never fully recover its losses. It was an innocent victim of the collapse of the agreement among Bellwood and the property owners. It is little comfort to note that any remedy for damages to the extent that one is available lies outside the Eminent Domain Act. While that is the current state of the law, the result to Handschy is unfair. In this case, absent the express inclusion of a waiver of the right of abandonment in the agreement between Bellwood and the land owners, the outcome of the statutory interpretation is certain. Although it was incorrect in its interpretation of the law, the trial court's ruling was understandable. But for strict statutory construction, it is reasonable to conclude that Bellwood would not be allowed to abandon the deal when the parties had made so many substantial changes in reliance on Bellwood's stated intent to take the property. However, the statute being what it is, only legislative action can prevent a recurrence of this unjust situation.